UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JOHN JACKSON | * | CIVIL ACTION NO.  12-1892 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| WARDEN, WINN CORRECTIONAL CENTER | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* Petitioner John Jackson filed a petition for writ of *habeas corpus* pursuant to 28

U.S.C. § 2254 on July 12, 2012.  [doc. # 1].  Respondent responded to the petition on February

22, 2013.  [doc. # 14].  Petitioner, an inmate in the custody of Louisiana's Department of Public

Safety and Corrections incarcerated at the Winn Correctional Center, Winnfield, Louisiana,

attacks his conviction for (1) possession of cocaine, (2) possession of cocaine with the intent to

distribute, (3) possession of marijuana with intent to distribute, (4) possession of

methamphetamine with intent to distribute, and (5) aggravated flight from an officer.  This matter

has been referred to the undersigned for review, report, and recommendation in accordance with

28 U.S.C. § 636 and the standing orders of the Court.

BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal:

> Officer Dean Baugh and Officer Jeremy Kent from the Monroe Police Department
> attempted to stop defendant because of a traffic violation; however, defendant fled
> and was pursued in a high speed chase through a residential neighborhood. Defendant
> drove his car at 70 m.p.h. through children's play zones and residential yards, finally

stopping in a field. He then abandoned his vehicle and fled on foot. Officer Baugh was able to corner defendant under a car, and when defendant refused to come out, the officers were forced to use pepper spray. Once defendant was removed from under the car, he was read his *Miranda* rights and searched. The search was performed by Officer Craig Honeycutt, who found a small bag of cocaine and $ 2,201 in cash on defendant's person.

Defendant was arrested and transported to the Ouachita Correctional Center. Defendant later confessed that the cocaine belonged to him. A passenger in defendant's car, Audrey Hannon, gave the police the address of defendant's family home, 3913 Carver Street, and told them that she had seen defendant's stash of drugs in one of the bedrooms. Defendant admitted to the police that he had a key to the house and had been there the day before his arrest, but said he did not reside there. Upon arriving at the address the officers obtained consent to search the home from one of the residents, James Jackson. Once inside the home, the officers found crack cocaine, methamphetamine, cocaine, and marijuana stuffed inside a recliner in the bedroom referred to by Ms. Hannon.

*State v. Jackson*, 34 So.3d 1121, 1122 (La.App. 2 Cir. 2010)*.*

The jury returned a verdict of guilty of the above-stated drug offenses, and Petitioner was sentenced to five years at hard labor on count 1 - possession of cocaine, thirty years at hard labor with the first two years to be served without the benefit of parole, probation or suspension of sentence on count 2 - possession of cocaine with intent to distribute, thirty years at hard labor on count 3 - possession of marijuana with intent to distribute, thirty years at hard labor on count 4 - possession of methamphetamine with intent to distribute and two years at hard labor on count 5 - aggravated flight from an officer.  (R. 840, 862-77).  The sentencing judge ordered that counts 2, 3, and 4 run concurrent with each other but consecutive to sentences in count 1 and count 5.  (R. 862-77).  His appeal to the Second Circuit Court of Appeal was denied on April 14, 2010.  (R. 917).  Shortly thereafter, Petitioner filed a writ to the Louisiana Supreme Court, which was denied on December 10, 2010.  (R. 924); *see also State v. Jackson*, 51 So. 3d 724 (La. 2010).

On March 1, 2011, Petitioner filed an application for Post Conviction Relief ("PCR") in the Fourth Judicial District Court raising five claims.  (R. 950-958).  On May 17, 2011, the state

trial court denied Petitioner's PCR.  (R. 978).   His application for writs was denied by the

Second Circuit on October 7, 2011.  (R. 992).  His writ application to the Louisiana Supreme

Court was denied on May 4, 2012.  (R. 1002); *see also State v. Jackson*, 88 So.3d 451 (La. 2012).

Petitioner filed the instant petition on July 12, 2012, raising the five claims originally

presented in his PCR application.  *See* [doc. # 1].  Specifically, Petitioner argues that his (1) Fifth

and Fourteenth Amendment rights were denied when the trial court denied his motion to suppress

his confession; (2) Sixth Amendment right to effective assistance of counsel was denied when his

trial attorney failed to examine the remaining jurors who could have heard prejudicial remarks;

(3) Fourteenth Amendment right to due process was denied when the District Attorney failed to

prove that the evidence used to convict him was not tainted by a former lab analyst; (4)

Fourteenth Amendment right to due process was denied when the evidence failed to support his

convictions; and, (5) Fourteenth Amendment right to due process was denied when the state trial

court denied his motion for a new trial without allowing Petitioner to present evidence.  [doc. #

1-2, 5-6].

The matter is now before the undersigned.

## LAW AND ANALYSIS

I.      **Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is

limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, –––– U.S. ––––, 131 S.

Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

II.     **Petitioner's Claims**

A.      Claim One: Trial court's denial of the motion to suppress Petitioner's confession

Petitioner alleges that his confession was improperly admitted by the trial court in violation of his Fifth and Fourteenth amendment rights.  [doc. # 1-2, P. 7].  Petitioner maintains that "[t]he state failed to meet its burden of proof that a confession was made and that it was voluntary." *Id.* at 9.

The state appellate court found "the transcript of [Petitioner's] trial contains police

testimony indicating that Jackson was informed of his *Miranda* rights, and that his confession was obtained without the use of fear, duress, intimidation, menaces, threats, inducements or promises.*"* (R. 992) (citing *State v. Castillo*, 389 So. 2d 1307 (La. 1980)(internal citations omitted).

The Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during custodial interrogation without a *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A suspect is in custody for purposes of *Miranda* when he is placed under formal arrest or when a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest." *United States v. Gonzalez*, 121 F.3d 928, 939 n.6 (5th Cir. 1997). Interrogation, for purposes of *Miranda*, includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Petitioner was in clearly in custody and was interrogated by the officers upon his arrival at Ouachita Correctional Center ("OCC". However, the record shows that Petitioner knowingly, voluntarily, and intelligently waived his *Miranda* rights. The waiver inquiry "has two distinct dimensions:" waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 427 (1986). The prosecution need not show that a waiver of Miranda rights was express. An "implicit waiver" of the "right to remain silent" is sufficient to admit a suspect's statement into evidence. *North Carolina v. Butler*, 441 U.S.

369, 376 (1979).  *Butler* made clear that a waiver of *Miranda* rights may be implied through "the

defendant's silence, coupled with an understanding of his rights and a course of conduct

indicating waiver." 441 U.S., at 373.

If the State establishes that a *Miranda* warning was given and the accused made an

uncoerced statement, this showing, standing alone, is insufficient to demonstrate "a valid waiver"

of Miranda rights.  *Miranda*, 384 U.S. at 475.  The prosecution must make the additional

showing that the accused understood these rights.  *Colorado v. Spring*, 479 U.S. 564, 573-575

(1987).  Where the prosecution shows that a *Miranda* warning was given and that it was

understood by the accused, an accused's uncoerced statement establishes an implied waiver of

the right to remain silent.  *Berghuis v. Thompkins*, ___U.S. ___, 130 S. Ct. 2250, 2262 (2010).

Finally, the law can presume that an individual who, with a full understanding of his or her

rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish

the protection those rights afford.  *Id.* at 2262.

The record indicates that Officer Baugh reminded Petitioner of his *Miranda* rights upon

arrival at OCC. (R. 593).   In response, Petitioner indicated that he understood his rights, and

according to the officer, he did not appear to be under the influence of narcotics or intoxicating

beverages.  *Id.*  After indicating that he understood his rights, Petitioner confessed to possessing

the bag of cocaine and frequenting the 3913 Carver Street residence, to which he admitted

having a key.  *Id*.  There is no basis in the record to conclude that Petitioner did not understand

his rights when he indicated that he did, or that the police in any way forced him to speak.

Accordingly, Petitioner's claim for relief based on a violation of his Fifth Amendment rights

lacks merit and should be **DENIED**.

      B.      <u>Claim Two: Trial counsel failed to examine remaining jurors</u>

Petitioner asserts that his trial counsel was ineffective for failing to "take the appropriate steps to ensure that [Petitioner's] jury was impartial." [doc. # 1-2, P. 10].  Specifically, Petitioner alleges that "Prospective juror Sammie Staten told at least three other members of the Panel Two venire, Casey Tripp, Shannon Wise, and Timothy Lewis, that Defendant "*has a rap sheet as long as his arm and he's been in trouble his whole life. [Staten] doesn't know why he's having a trial*."  *Id.* (emphasis in original).

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the

ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

The state appellate court determined that "[t]here is no evidence that the two jury panel members in question heard the prejudicial comment. Thus, Jackson fails to prove that his attorney's performance was deficient or prejudiced his case." (R. 992-93)(citing *Strickland*, 466 U.S. at 668.). Additionally, when this precise issue was presented on direct appeal, the state appellate court found that "[t]he defense failed to meet its burden of proving that this particular venire panel should have been set aside because no showing of prejudice has been made, much less a showing that the prejudice was so severe a fair trial was impossible. Therefore, the trial court did not abuse its discretion in failing to set aside this particular venire panel." *Jackson*, 34 So.3d at 1123.

The undersigned finds that the state courts' findings are entirely reasonable based on the

evidence in the record. Once defense counsel became aware of prospective juror Staten's statement, he immediately moved to quash juror Panel Two. (R. 443). Accordingly, the trial court questioned prospective juror Shannon Wise about Staten's statement. (R. 447). According to Wise, he and Lewis were the closest to hearing the remark and that three to four people were sitting on a bench when Staten made the remark. *Id.* However, the other members of the panel were not listening because they were on their cell phones. (R. 448). Casey Tripp, another prospective juror, testified that other jurors were walking from the bathroom, but "if they caught any part of that conversation it was just a few words." (R. 452).

Ultimately, the state trial court denied Petitioner's motion to quash the entire panel, but agreed to excuse Tripp, Wise, and Staten for cause. (R. 482). In response, defense counsel moved for a mistrial. (R. 483). The court again denied his motion, but agreed to question prospective jurors Gates and King, the only two remaining members of the Panel Two Venire who could have heard the comments. (R. 482).

The undersigned cannot find that either of the state appellate courts' determinations were unreasonable in light of the record. Specifically, once defense counsel learned of Staten's statement, he immediately moved to quash the panel. Additionally, after the trial court denied his motion, he then moved for a mistrial. Finally, in response to counsel's objections, the trial judge removed some of the panel members and agreed to question the others to be sure that there was no basis for their removal for cause. Therefore, Petitioner is unable to establish that defense counsel's performance was deficient or prejudiced his case. Petitioner's claim for relief on the basis of ineffective assistance of counsel should be **DENIED.**

      C.      <u>Claim Three: Evidence used to convict Petitioner was tainted</u>

Petitioner argues that his conviction "was based on the introduction of evidence that was

more than likely tainted." [doc. # 1-2, P. 13].  Specifically, Petitioner maintains that the "initial

forensic chemist to test the drugs, Katherine Simmerman, had been fired from the North

Louisiana Crime Lab for incompetence.  It was never conclusively proven by the State that the

evidence used to convict Mr. Jackson was the same evidence that was sent to the crime lab for

analysis."  *Id.*

The state appellate court determined "[t]he crime lab technician, Susan Rutledge, testified

that she re-analyzed material tested by a former lab technician. The evidence was labeled and no

evidence was presented at trial, or in Jackson's application, that there was a problem in the chain

of custody."  (R. 993).  Specifically, Susan Rutledge, accepted by the trial court as an expert in

the analysis of controlled dangerous, testified that she analyzed and re-tested the evidence at

issue and identified the substances as marijuana, cocaine, and methamphetamine.  (R. 753-54).

Moreover, as the state appellate court determined, the undersigned finds that there are no

problems that disrupted the chain of custody.  The officer who found the drugs properly sealed

the substances in evidence envelopes with identifying information, and ultimately sent the

envelopes to North Louisiana Criminalistics Laboratory for testing.  (R. 675, 679-86).  A review

of the state court record shows that the state court's findings were entirely reasonable, therefore,

Petitioner's claim for relief on the basis of the introduction of tainted evidence should be

**DENIED.**

      D.      Claim Four: Insufficient evidence to support Petitioner's convictions

Petitioner argues that the evidence was insufficient to convict him of the above-stated

drug convictions beyond a reasonable doubt.  [doc. # 1-2, P. 19-20].  In support of this claim,

Petitioner maintains that he was not in possession of the drugs.  *Id*.

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient

to support his conviction, the limited question before a federal *habeas* court is whether the state

appellate court's decision to reject that claim was an objectively unreasonable application of the

clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v.*

*Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if,

"after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*,

443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the

correct guilt or innocence determination, but rather whether it made a rational decision to convict

or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on

sufficient evidence "even though the facts also support one or more reasonable hypotheses

consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th

Cir. 1991).

Although the Louisiana appellate court did not explicitly invoke and apply the *Jackson*

standard, the court did address Petitioner's contention that he never possessed the drugs, stating:

> the testimony elicited at trial, and Jackson's own confession, revealed that Jackson
> had a key to the house where the drugs were discovered.  He also admitted to going
> to the house the day before he was arrested. Moreover, there was witness testimony
> at trial that police were informed that Jackson kept his drugs in the exact bedroom
> where they were located in the house.

 (R. 993).  The appellate court is referring to the testimony of Petitioner's girlfriend, Audrey

Hannon, who was a confidential informant in this case.  (R. 635).  According to the record, Ms.

Hannon told officers that Petitioner kept drugs at his mother's residence at 3913 Carver Street,

even describing the specific location inside the house where the drugs could be found.  (R. 634,

770-71).  She stated that she was actually in the residence earlier that same day and saw the drugs

first hand when Petitioner showed them to her.  (R. 770).  When the officers arrived on the scene

and conducted a search of the residence, they found twelve zip-lock bags of crack cocaine, methamphetamine, powder cocaine and marijuana in the bedroom, as described by Ms. Hannon. (R. 635).

After Petitioner was apprehended and placed in custody, he was interrogated and confessed that the small bag of cocaine found on his person was his.  (R. 642).  Additionally, Petitioner admitted to having a key to the house where the drugs were discovered and that he had been to the 3913 Carver Street residence the day before he was arrested.  (R. 643).

Ultimately, the Louisiana appeals court found that the evidence clearly supports the jury's finding of guilty beyond a reasonable doubt.  (R. 993).  A review of the state court record shows that the state court's findings were entirely reasonable; *a fortiori*, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable; therefore, Petitioner's claim for relief based on insufficiency of the evidence should be **DENIED.**

E.        Claim Five: Denial of a new trial without allowing Petitioner to present evidence

In Petitioner's final claim, he argues that his Fourteenth Amendment right to due process was denied when the trial court denied his motion for a new trial without allowing Petitioner to present evidence.  [doc. # 1-2, P. 16].  On April 22, 2009, Petitioner filed a motion for a new trial based on newly discovered evidence.  According to Petitioner, the newly discovered evidence "suggested that Audrey Hannon had planted the drugs at 3913 Carver Street . . . [and] testimony at trial also suggested the possibility of this occurrence." *Id.* at 20.  A hearing on the motion was held on June 4, 2009.  "At the outset of the hearing, defense counsel informed the trial court that the witnesses, who were served domiciliary, were not present." *Id.* at 21.  Ultimately, the trial court agreed to grant Petitioner's continuance in order to give him additional time to find his witnesses.  (R. 859-60).  Thereafter, on June 22, 2009, Petitioner appeared before the trial court

judge for sentencing. (R. 862). However, again Petitioner's witnesses did not appear in court, even after defense counsel sent a second investigator. (R. 864).

The undersigned cannot find that the state court's decision to deny Petitioner's motion for a new trial was unreasonable in light of the current record. Petitioner had two opportunities to present his newly discovered evidence; however, his witnesses did not appear in court to testify on Petitioner's behalf. Therefore, without the witnesses' testimony, the state trial court judge had no other option but to deny the motion for a new trial. Accordingly, Petitioner's claim fro relief on the basis that his new trial motion should not have been denied without allowing him to present evidence should be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner John Jackson [doc. # 1] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 26th day of March, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE